UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES WAYNE
ROGERS,

               Plaintiff

v.

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

Civil Action No.: 17-14151
Honorable Marianne O. Battani
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 14, 17]**

Plaintiff Charles Wayne Rogers appeals the final decision of

defendant Commissioner of Social Security (Commissioner), which denied

his application for supplemental security income (SSI) under the Social

Security Act.  Both parties have filed summary judgment motions, referred

to this Court for a report and recommendation under 28 U.S.C. §

636(b)(1)(B).  After review of the record, the Court **RECOMMENDS** that:

- Rogers' motion [ECF No. 14] be **GRANTED**;

- the Commissioner's motion [ECF No. 17] be **DENIED**; and

- the matter be **REMANDED** under sentence four of 42 U.S.C. §

   405(g) for further consideration consistent with this report and

recommendation.

## I.     BACKGROUND

### A.     Rogers' Background and Disability Applications

Born December 6, 1972, Rogers was 41 years old on the alleged disability onset date of August 26, 2014.  [ECF No. 10-2, Tr. 134, 143].  He has no past relevant work.  [*Id.*, Tr. 143].  Rogers claims disability due to bipolar disorder, schizophrenia, anxiety, ADHD, migraines, seizures, low cognitive skills, and back and leg problems.  [ECF No. 10-3, Tr. 191-92].

After a hearing on August 9, 2016, during which Rogers and a vocational expert (VE) testified, the ALJ found that Rogers was not disabled.  [ECF No. 10-2, Tr. 134-188].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.,* Tr. 1-6].  Rogers timely filed for judicial review.  [ECF No. 1].

### B.     The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

2

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 920(c).

Applying this framework, the ALJ concluded that Rogers was not disabled.  At the first step, she found that Rogers had not engaged in substantial gainful activity since the alleged onset date of August 26, 2014. [ECF No. 10-2, Tr. 136].  At the second step, she found that Rogers had the severe impairments of "major depressive disorder, bipolar disorder, and history of polysubstance abuse."  [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, Tr. 136-38].

Between the third and fourth steps, the ALJ found that Rogers had the RFC to perform a full range of work at all exertional levels, except that he must:

> avoid climbing ladders, ropes, or scaffolds; no exposure to hazardous machinery and unprotected heights….[He] is limited to unskilled jobs with simple, routine tasks that does not involve production rate or tandem tasks. He should not interact with the general public and should have no more than occasional interaction with co-workers and supervisors.

[*Id.*, Tr. 138].  At step four, the ALJ found that Rogers had no past relevant work.  [*Id.*, Tr. 143].  At the final step, after considering Rogers's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Rogers could perform, including positions as kitchen helper, housekeeper and inspector.  [*Id.*, Tr. 144].

4

## II.    ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Rogers argues that the ALJ failed to properly consider whether his nearly two-year gap in treatment was a symptom of his mental illnesses rather than evidence that his impairments were not disabling. He also argues the ALJ erred by not properly considering his consistently low GAF scores and weighing the opinions of the consultative psychological examiner. The Court agrees that the ALJ erroneously construed the gap in

5

Rogers' treatment without properly considering whether good reasons for

his noncompliance existed, and that remand is thus necessary.

**B.**

Under 20 C.F.R. § 404.1530(b), failure to follow prescribed treatment

without a good reason will result in a finding of not disabled. *Id.*  But ALJs

are required to consider the claimants' mental limitations when deciding if

acceptable reason exists for failing to follow prescribed treatment.  Section

404.1530(c).  And Social Security Ruling 16-3p provides that an ALJ will

not find an individual's symptoms inconsistent with the evidence in the

record for noncompliance with or failure to seek treatment without

considering possible reasons he or she may not comply with treatment or

seek treatment consistent with the degree of his or her complaints. Soc.

Sec. Rul. 16-3p Titles II and XVI: Evaluation of Symptoms in Disability

Claims, SSR 16-3P (Oct. 25, 2017), 2017 WL 5180304.[2]

---

[2] SSR 16-3p superseded SSR 96-7p regarding the evaluation of claimants'
statements on the intensity, persistence, and limiting effects of symptoms
for an alleged disability for decisions made after March 28, 2016.

> Although SSR 16-3p supersedes SSR 96-7p, 'according to the very
> language of SSR 16-3p, its purpose is to 'clarify' the rules concerning
> subjective symptom evaluation and not to substantially change them.'
> It follows, therefore, that the procedures for reviewing an
> ALJ's…assessment under SSR 16-3p are substantially the same as
> the procedures under SSR 96-7p.

When considering the individual's treatment history, the ALJ should

consider that, due to mental limitations or impairment, "the individual may

not understand the appropriate treatment for or the need for consistent

treatment of his or her impairment" or even "be aware that he or she has a

disorder that requires treatment." *Id.*  Further, ALJs are to consider and

address reasons for not pursuing treatment that are pertinent to an

individual's case. *Id.*  ALJs should "review the case record to determine

whether there are explanations for inconsistencies in the individual's

statements about symptoms and their effects, and whether the evidence of

record supports any of the individual's statements at the time he or she

made them." *Id.*

Even before the relevant Social Security Ruling specifically

addressed the effect of mental illness on compliance, the Sixth Circuit

recognized that for a claimant suffering from mental illness, noncompliance

with treatment could be a symptom of his condition, rather than evidence

---

*Duty v. Comm'r of Soc. Sec.*, 2018 WL 4442595, at * 6 (N.D. Ohio Sept. 18, 2018) (quoting *Brothers v. Berryhill*, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017)). This Court agrees with others in the Sixth Circuit that existing case law (decided under SSR 96-7p) controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.  *See id.*

that his condition is not disabling. *See White v. Comm'r of Soc. Sec.*, 572

F.3d 272, 283 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935,

945 (8th Cir. 2009)); *Polhemus v. Colvin*, 2016 WL 949218, at *4 (E.D.

Mich. Mar. 14, 2016); s*ee also Blankenship v. Bowen*, 874 F.2d 1116, 1124

(6th Cir. 1989) ("Appellant may have failed to seek psychiatric treatment for

his mental condition, but it is a questionable practice to chastise one with a

mental impairment for the exercise of poor judgment in seeking

rehabilitation.").

Although the Sixth Circuit did not establish a *per se* rule that the

existence of a mental impairment constitutes an acceptable reason for

failure to follow prescribed treatment, noncompliance with medication could

be justified by mental illness if there is some evidence linking the mental

illness to the noncompliance." *Burge*, 2013 WL 6837192, at *3.  "[T]o

establish a severe mental impairment as an acceptable reason excusing a

claimant's adherence to a medical regimen, including prescription

psychiatric medications, the record must contain evidence expressly linking

noncompliance with the severe mental impairment. The requisite evidence

of that link will preferably appear in an opinion or assessment by a medical

source." *Id.*

The record here, which documents at least four of as many as 20 psychiatric hospitalizations, is replete with medical assessments linking Rogers' noncompliance with his psychiatric medication regimen to his mental illness.  [ECF No. 10-7 to 10-12].  For example, records from his October 2014 hospital admission list not taking his medication under the heading: "History of Present Illness" and note that he is noncompliant with medication due to side effects. [ECF No. 10-9, Tr. 604, 606].  Records from that same admission note "not participating in treatment" as a "current symptom[]…" [*Id.*, Tr. 630].  Consulting examiner Nick Boneff, Ph.D., whose opinion the ALJ afforded some weight, notes that Rogers has a history of noncompliance with psychiatric medication which has triggered many episodes of decompensation. [ECF No. 10-11, Tr. 825].  Many other examples noting Rogers' noncompliance with medication as a symptom or component of his illness appear throughout the record. [*See, e.g., id.*, Tr. 862; ECF No. 10-12, Tr. 884, 907].

The Commissioner argues that the ALJ properly identified and considered other reasons for Rogers' lack of treatment between late 2014 and 2016, and relied on these reasons to justify not accepting his allegations of disabling symptoms.  [ECF No. 17, Page.ID 1082-85].  The ALJ relied on Rogers' testimony that transportation was his biggest

obstacle to seeking treatment. [ECF No. 10-2, Tr. 140]. But the ALJ

dismissed Rogers' transportation issues as a reason to prevent him from

seeking treatment because she assumed that, "despite whatever

transportation issues the claimant may have, the fact remains that, if his

symptoms were truly as severe as alleged, he would have sought emergent

treatment or, at the very least, a free clinic, yet failed to do so." [*Id.*, Tr.

140, 173]. This assumption is at the heart of the ALJ's error. Moreover,

when assessing a claimant's reasons for noncompliance with treatment,

"the ALJ must consider not only explanations that the individual may

provide, but also other information in the case record. The onus is on the

ALJ to develop the case record in this regard." *Polhemus*, 2016 WL

949218, at *4 (internal quotations omitted).

In addition to the record evidence linking Rogers' medication

noncompliance with his mental illness discussed above, the treatment

records indicate that Rogers' insight and judgment was poor when he was

not taking medication. [ECF No. 10-7, Tr. 334, ECF No. 10-8, Tr. 552, ECF

No. 10-11, TR. 854]. The records emphasize his need for support in

medication management as pivotal in treating his impairment. [*See e.g,*

ECF No. 10-12, Tr.907]. It was the ALJ's responsibility to consider the

foregoing evidence before relying on Rogers' noncompliance to discredit

his testimony. *Polhemus*, 2016 WL 949218, at *7; *see also*, *Pate-Fires*,

564 F.3d at 946. The ALJ's decision, however, considers only one

explanation—that his symptoms were less severe than he claimed. [ECF

No. 10-2, Tr. 140].

The ALJ's also concluded that, "during the nearly two-year gap in

treatment, [Rogers] remained off his medications, but there is no indication

that he significantly decomposed during that period." [*Id.*, Tr. 141]. This

conclusion is flawed both legally and factually. First, it runs afoul of the

Sixth Circuit's specific admonition that "ALJs must be careful not to assume

that a patient's failure to receive mental-health treatment evidences a

tranquil mental state." *White,* 572 F.3d at 283. And second, it ignores non-

medical record evidence that undercuts that assumption. Specifically,

during this period, Rogers remained homeless, sometimes sleeping in

garages; was without custody of his children; and shunned treatment out of

fear of being hospitalized. [ECF No. 10-2, Tr. 158-59, 169-70, 173-74, 180-

81].

In sum, the ALJ's failure to properly consider the record evidence of

Rogers' mental impairment as the reason for his noncompliance with his

medication regimen was not consistent with Agency regulations. *See*

*Polhemus*, 2016 WL 949218, at *7. Because the ALJ applied the negative

inference derived from the gap throughout her decision, remand is necessary.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Rogers's motion [ECF No. 14] be **GRANTED**; that the Commissioner's motion [ECF No. 17] be **DENIED**; and that this matter be **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD

Dated: January 17, 2019          United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.